**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| PAUL THAYIL, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| v. | ) | Case No. 10-3200-CV-S-REL |
| | ) | |
| SIMON COWELL, ET AL., | ) | |
| | ) | |
|     Defendants. | ) | |

**<u>SUGGESTIONS IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
AND MOTION TO STRIKE</u>**

# TABLE OF CONTENTS

I.     **INTRODUCTION** .................................................................................................... 1

II.    **AUTHORITY AND ARGUMENT** .................................................................... 3

    **A.**    **Standards for Dismissal** .................................................................... 3

    **B.**    **Plaintiff Has Not Pled Any of the Required Elements of a Copyright Infringement Claim** ............................................................ 4

        1.    Plaintiff Failed to Plead Ownership of a Valid Copyright ......................... 4

        2.    Plaintiff Failed to Allege Facts Establishing Infringement ........................ 6

    **C.**    **Plaintiff's Trade Secret and Lanham Act Claims Fail Because He Has Not Alleged the Existence of a Trade Secret or Trademark, Much Less Misappropriation or Infringement by Any Defendant** ...................... 9

    **D.**    **Plaintiff's Tort Claims (Counts I, II, III, IV and VI) Fail Because Plaintiff Has Not Alleged Facts Establishing the Elements of Those Claims, and Many of Those Claims are Preempted by the Copyright Act** ................... 10

        1.    Fraud ............................................................................................. 11

        2.    Conversion .................................................................................... 11

        3.    Failure to Attribute ....................................................................... 12

        4.    Conspiracy .................................................................................... 12

        5.    Equal Protection ............................................................................ 12

        6.    Breach of Fiduciary Duty ............................................................. 13

        7.    RICO ............................................................................................ 13

    **E.**    **Plaintiff Is Not Entitled To Recover Punitive Damages As a Matter of Law, and Plaintiff's Reference to Punitive Damages Must Be Stricken** ................. 14

III.    **CONCLUSION** .................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009)...................................................................................................3

*Blair v. World Tropics Prods.*,
502 F. Supp. 2d 828 (W.D. Ark. 2007).........................................................................14

*Bureerong v. Uvawas*,
922 F. Supp. 1450 (C.D. Cal. 1996) ............................................................................14

*Coyne's & Co., Inc. v. Enesco, LLC*,
565 F. Supp. 2d 1027 (D. Minn. 2008)........................................................................11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003)........................................................................................................10

*Davis v. The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001).........................................................................................14

*DuBois v. Ford Motor Credit Co.*,
276 F.3d 1019 (8th Cir. 2002) .......................................................................................3

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991).......................................................................................................7

*Grewell v. State Farm Mut. Auto. Ins. Co.*,
162 S.W.3d 503 (Mo. App. 2005) ...............................................................................12

*Hartman v. Hallmark Cards, Inc.*,
833 F.2d 117 (8th Cir. 1987) ...................................................................................7, 10

*Hays v. Sony Corp. of Am.*,
847 F.2d 412 (7th Cir. 1988) .......................................................................................14

*In re GMC Anti-Lock Brake Prods. Liab. Litig.*,
966 F.Supp. 1525 (E.D. Mo. 1997)................................................................................3

*In re K-tel Int'l, Inc. Sec. Litig.*,
300 F.3d 881 (8th Cir. 2002) .........................................................................................3

*IOS Capital, LLC v. Allied Home Mortg. Capital Corp.*,
150 S.W.3d 148 (Mo. App. 2004) ...............................................................................11

*Jorgensen v. Epic/Sony Records*,
351 F.3d 46 (2d Cir. 2003).............................................................................................6

21441961\V-5

*Levy v. Ohl*,
477 F.3d 988 (8th Cir. 2007) ..................................................................3

*Moore v. Columbia Pictures Industries, Inc.*,
972 F.2d 939 (8th Cir. 1992) ..................................................................6

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
406 F.3d 1052 (8th Cir. 2005) ................................................................11

*Muir v. Ruder*,
945 S.W.2d 33 (Mo. App. 1997) .............................................................11

*Murray Hill Publ'ns, Inc. v. Twentieth Century-Fox Film Corp.*,
361 F.3d 312 (6th Cir.), *cert. denied*, 543 U.S. 959 (2004) ....................6

*Nelson v. PRN Prods., Inc.*,
873 F.2d 1141 (8th Cir. 1989) ..................................................................7

*Nintendo of Am., Inc. v. Aeropower Co.*,
34 F.3d 246 (4th Cir. 1994) ....................................................................14

*Reed Elsevier, Inc. v. Muchnick*,
130 S.Ct. 1237 (2010) ...............................................................................4

*Schoolhouse, Inc. v. Anderson*,
275 F.3d 726 (8th Cir. 2002) ................................................................6, 8

*Shervin v. Huntleigh Sec. Corp.*,
85 S.W.3d 737 (Mo. App. 2002) .............................................................13

*Spinks v. City of St. Louis Water Div.*, 176 F.R.D. 572 (E.D. Mo. 1997)......................................14

*State ex rel. Diehl v. Kintz*,
162 S.W.3d 152 (Mo. App. 2005) ...........................................................12

*Stringer v. St. James R-1 School Dist.*,
446 F.3d 799 (8th Cir. 2006) ..................................................................3

*Tabachnik v. Dorsey*,
257 F. Appx. 409 (2d Cir. 2007)................................................................7

*Taylor Corp. v. Four Seasons Greetings, LLC*,
315 F.3d 1039 (8th Cir. 2003) ................................................................8

*Taylor Corp. v. Four Seasons Greetings, LLC*,
403 F.3d 958 (8th Cir. 2005) ....................................................................4

*U.S. v. Morrison*,
120 S.Ct. 1740 (2000)..............................................................................12

21441961\V-5

iv

*Wisdom v. First Midwest Bank of Poplar Bluff,*
   167 F.3d 402 (8th Cir. 1999) ................................................. 13

*Zella v. E.W. Scripps Co.,*
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ................................. 7

**STATUTES**

15 U.S.C. § 1126 ............................................................................. 10

17 U.S.C. § 101 ............................................................................... 5

17 U.S.C. § 102(b) ........................................................................... 7

17 U.S.C. § 106A ............................................................................ 12

17 U.S.C. § 301 .............................................................................. 11

17 U.S.C. § 301(a) .......................................................................... 14

17 U.S.C. § 411(a) ........................................................................ 4, 5

18 U.S.C. §§ 1341 and 1343 .......................................................... 13

18 U.S.C. § 1961 (1) ...................................................................... 13

Mo. Rev. Stat. §§ 417.453(2), (4) .................................................. 9

Mo. Rev. Stat § 417.453(4) ............................................................. 9

**OTHER AUTHORITIES**

37 C.F.R. § 202.1 ............................................................................ 7

F.R.C.P. 12(f) ............................................................................. 1, 14

F.R.C.P. 12(b)(6) ....................................................................... 1, 3, 6

<u>Suggestions in Support of Motion to Dismiss and Motion to Strike</u>

Defendants Sony Music Entertainment, Simon Fuller, 19 Entertainment, CKX, Inc. Simon Cowell and Nigel Lythgoe, (collectively, "Defendants") submit this Memorandum in Support of its Motion to Dismiss the Complaint of Paul Thayil ("Plaintiff" or "Thayil") for Failure to State a Claim Upon Which Relief Can be Granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and To Strike Immaterial Matter, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

I.    **<u>INTRODUCTION</u>**

Plaintiff seeks $1.8 million in actual damages and $4.9 million in punitive damages from each Defendant in this lawsuit, various high profile media individuals and entities that have some involvement with four of America's most successful reality television shows:  American Idol®, Dancing With The Stars®, So You Think You Can Dance® and America's Got Talent® (collectively, the "Shows").  Plaintiff has asserted six different claims against Defendants, including ones for copyright infringement, trade secret, conspiracy, fraud and misappropriation. Although the Complaint is difficult to decipher, Plaintiff appears to claim that he created the Shows and that the Defendants "stole" his purported intellectual property.  (Compl. at 3.)  The Plaintiff, however, failed to articulate any facts that meet the elements of any claim he pursues and his Complaint should be dismissed in its entirety.

The crux of the Complaint is Plaintiff's assertion that he authored a "marketing plan," which he attached to his Complaint (Complaint Ex. A, hereafter, the "Marketing Plan"), and that the Defendants somehow received and improperly used his "trade secret intellectual and copyrighted property of the 'Marketing Plan'" to develop the Shows.  (Compl. at p. 2.)  As an initial matter, Plaintiff fails to plead that he even has a registered copyright, a prerequisite to filing suit.  Moreover, assuming Plaintiff could overcome this procedural deficiency, even a

cursory look at Plaintiff's Marketing Plan reveals no similarity whatsoever to any of the allegedly infringing Shows.

Plaintiff's dance concept, called "ShyDancer" consisted of filming amateurs dancing in the most private room in their home like the bedroom or kitchen so that the dancer can lose "any inhibitions." (Compl. Ex A., Marketing Plan p. 3.) Amateur tapes would then go into a pool to be selected for a half hour television show and also be made available for sale in two HMV stores. (*Id.*) This hardly sounds like the format for either "Dancing with the Stars" or "So You Think You Can Dance" shows that involve televised live dance competitions before panels of select judges, with audience voting.

Plaintiff's music concept called "MusicFlow" was to have musicians from around the world perform at a concert, attend a filming session and be given the opportunity to have their CDs placed in the two same HMV music stores as that of ShyDancer. (Marketing Plan, p. 5). Plaintiff's promotion strategy consisted of distributing "glossy car stickers" and driving cars with large flags on them that had the MusicFlow website (*Id.*, p. 1). Again, "MusicFlow" has no similarity to "American Idol" or "America's Got Talent," which are essentially televised talent shows, after auditions around the country, featuring selected performers competing for a top prize.

In sum, nothing in Plaintiff's Marketing Plan involves any of the hallmark characteristics of Defendants' contest based reality television show series. Indeed, the only similarity between any of Defendants' Shows and Plaintiff's Marketing Plan is the idea of amateur performances being commercialized. Copyright law, however, does not protect ideas – it only protects original works of authorship.

Plaintiff has failed to establish that he has met any of the requirements necessary to assert *any* rights against these Defendants (or anyone else, for that matter). Plaintiff's Complaint,

under even the most generous interpretation, fails to state any claim for relief, and no amount of amending will cure what are fatal legal defects. Accordingly, Plaintiff's Complaint should be dismissed without leave to amend.

## II. AUTHORITY AND ARGUMENT

### A. Standards for Dismissal

When considering a motion to dismiss, this Court need not accept all legal conclusions as true. As the United States Supreme Court has made clear: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. ... Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1947 (2009) (citing Fed. Rule Civ. Proc. 8(a)(2)); *see also Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007); *DuBois v. Ford Motor Credit Co.*, 276 F.3d 1019 (8th Cir. 2002) (stating that mere conclusory allegations in a complaint are not sufficient to withstand a motion to dismiss for failure to state a claim). Even when the plaintiff is *pro se*, and therefore entitled to liberal interpretation of pleading, the Plaintiff must still allege facts sufficient to state a legal claim to survive a motion to dismiss. *Stringer v. St. James R-1 School Dist.*, 446 F.3d 799, 802 (8th Cir. 2006).

When considering a motion to dismiss under Rule 12(b)(6), "[t]he Court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002). Hence, courts may consider documents attached to pleadings and materials within the public record without converting a Rule 12(b)(6) motion into a motion for summary judgment, where the documents are referred to by the complaint and are integral to the plaintiff's claim. *See In re GMC Anti-Lock Brake Prods. Liab. Litig.*, 966 F.Supp. 1525, 1532 (E.D. Mo. 1997). Here, the

Court can consider both the Marketing Plan and the formats of the Shows since they are referenced repeatedly in the Complaint.

As Plaintiff has failed to allege the facts necessary to support any cause of action, his Complaint must be dismissed.

**B.  Plaintiff Has Not Pled Any of the Required Elements of a Copyright Infringement Claim**

Plaintiff has alleged that Defendants stole his intellectual property, which he considers to be copyrighted.  (Compl. p. 2, and Counts I and III at pp. 3-4.)  To establish copyright infringement, a plaintiff must prove both ownership of a valid copyright and infringement of that copyright.  *Taylor Corp. v. Four Seasons Greetings, LLC,* 403 F.3d 958 (8th Cir. 2005).  Here, Plaintiff has failed to plead either requirement.

1.  Plaintiff Failed to Plead Ownership of a Valid Copyright

Ownership of a valid copyright is established by proving (1) originality and copyrightability of the material and (2) compliance with the statutory formalities of the Copyright Act, which includes a timely-obtained certificate of registration.[1] *See id.* at 962.

Plaintiff's claim for copyright infringement must be dismissed because Plaintiff has not alleged that he holds a valid copyright registration for the Marketing Plan.  17 U.S.C. § 411(a) provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title[.]"  Because the Marketing Plan is unpublished, and its putative author, Plaintiff, is at least a habitual resident of the United States, the Marketing Plan is a United States

---

[1] Although the Supreme Court's recent decision in *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010), indicates that the registration requirement is not jurisdictional, a plaintiff still must effect registration before proceeding with an infringement claim.  17 U.S.C. § 411(a).  This failure alone is sufficient grounds for granting a motion to dismiss the copyright claims.

work, and Plaintiff must, therefore, obtain a copyright registration prior to commencing an infringement action for infringement.

Indeed, Plaintiff's own allegations show that the Marketing Plan has not been "published." Publication under the Copyright Act means "the distribution of copies … of a work to the public by sale or other transfer of ownership …. [or] the offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display…." 17 U.S.C. § 101. In his Complaint, Plaintiff repeatedly alleges that his Marketing Plan is "trade secret," and that to the extent he provided it to any person, it was <u>not</u> for purposes of public distribution or performance - it was "for their evaluation and possible participation in a business venture with the Plaintiff," and that "no rights [were] conveyed to Defendants for copying, duplication or use in any manner or at any time." (Compl. ¶ 10.) Therefore, the Marketing Plan must be an "unpublished work." Because the work in question is unpublished, the work is also a "United States work." A "United States work" is a work that, if unpublished, was created by authors who are all United States "nationals, domiciliaries, or habitual residents of the United States." 17 U.S.C. § 101. The Plaintiff describes himself as a "resident of Greene County, Missouri." (Compl. ¶ 2.) Therefore, the work is a United States work, and to institute an action for infringement of that work, the Plaintiff must have registered a claim to copyright in it. Plaintiff has not done so, nor has he alleged any facts that would indicate he has started the process of registering his claim to copyright. Therefore, to the extent Plaintiff attempts to state a claim for copyright infringement, that claim must be dismissed for failure to state a claim, because the Plaintiff has not registered his claim to copyright in that work. 17 U.S.C. § 411(a).

## 2. Plaintiff Failed to Allege Facts Establishing Infringement

To prove copyright infringement, a Plaintiff must also show that the Defendants had access to his work, and that the accused Shows are substantially similar to his work. *Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 729 (8th Cir. 2002). Plaintiff's allegation that the Defendants "stole and used the 'Marketing Plan' to produce and broadcast their own television shows" is conclusory and unsupported by factual assertions, and fails to establish a claim for copyright infringement under even the liberal standards of Rule 12(b)(6).

### a) Plaintiff's Infringement Claim Fails Because He Cannot Show any of the Defendants Had Access to His Work

To show access, the Plaintiff must do more than merely allege that he "provided" the work to the Defendants (Compl. ¶ 10) or that the Defendants "received a copy of the 'Marketing Plan' either directly, indirectly or inadvertently from the Plaintiff." (Compl. ¶ 13.) Rather, he must allege facts that show the Defendants had a "reasonable possibility" of viewing the allegedly infringed work. *Moore v. Columbia Pictures Industries, Inc.*, 972 F.2d 939, 942 (8th Cir. 1992).[2] Self-serving conclusory allegations cannot suffice to establish the access needed to prove infringement. *Murray Hill Publ'ns, Inc. v. Twentieth Century-Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir.), *cert. denied*, 543 U.S. 959 (2004)l *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). Accordingly, as the Complaint states no facts that would support a claim that the Defendants had access to the Plaintiff's Marketing Plan, Plaintiff's infringement claims must be dismissed.

---

[2] Even though the Eighth Circuit recognizes the "corporate receipt doctrine," *Moore,* 972 F.2d at 942, the Plaintiff alleges no facts, nor does it appear he can allege any facts, that indicates any of the Defendants received a copy of his Marketing Plan, or that there is a "reasonable possibility" any of them saw it. The Plaintiff does not even seem to know how the Defendants would have obtained a copy of his Marketing Plan (the Complaint accuses the Defendants of receiving the Marketing Plan, "directly, indirectly, or inadvertently"). See Compl. at 13.

b)      Plaintiff's Work Is Not Sufficiently Original to Merit Copyright Protection

Originality "is a constitutionally mandated prerequisite for copyright protection." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991).  The Plaintiff appears to be seeking protection simply for ideas (that is, the idea of an amateur performance-themed television show or musical performances).  But copyright protection does not extend to ideas, concepts, systems or methods of operation.  17 U.S.C. § 102(b); 37 C.F.R. § 202.1.  Plaintiff's Complaint specifically alleges that Defendants used the "ideas" outlined in his Marketing Plan (Compl. at p. 3), but, importantly, makes no allegation that the Marketing Plan itself has been infringed, only the ideas contained therein.  Alleging only similarity of ideas cannot form the basis of a proper copyright action.  Accordingly, the Plaintiff's copyright claims should be dismissed because the work on which they are based, the Marketing Plan, is not original.

c)      The Shows are not Substantially Similar to Plaintiff's Marketing Plan

Even if Plaintiff had registered a claim to copyright (he did not) and the Defendants had access to his Marketing Plan (they did not), the Plaintiff's copyright claims fail because he cannot show that any of the four Shows is substantially similar to his Marketing Plan.  The court can determine substantial similarity as a matter of law at the motion to dismiss stage, when the court has the opportunity to compare the works, and when "reasonable minds [can] not differ as to the absence of substantial similarity." *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143 (8th Cir. 1989); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124 (C.D. Cal. 2007) (granting motion to dismiss where there was no substantial similarity as to any protectable element in two cooking-talk shows); *Tabachnik v. Dorsey,* 257 F. Appx. 409, 410 (2d Cir. 2007) (granting motion to dismiss where no substantial similarity existed).

To be "substantially similar," works must bear some semblance to each other in both idea and expression. *Hartman v. Hallmark Cards, Inc*., 833 F.2d 117 (8th Cir. 1987). In determining whether works are substantially similar, the Court must first analyze similarity of ideas extrinsically, focusing on any objective similarities in details of the works; if the ideas behind the works are substantially similar, then the court must evaluate similarity of expression intrinsically, according to response of an ordinary, reasonable person. *Schoolhouse,* 275 F.3d at 729. "Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar." *Id.* In this case, the works in question have only one common element: the idea of amateur performances. They are therefore neither similar in their extrinsic ideas, nor similar in expression. A single, generic element cannot be the backbone of a copyright infringement claim. *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039 (8th Cir. 2003) (similarity between plaintiff's and defendant's works that are limited to hackneyed elements cannot provide the basis for finding substantial similarity).

Plaintiff's Marketing Plan describes the "Musicflow" and "ShyDancer" concepts as involving:

- ShyDancer: Amateurs videotaping themselves dancing in a home environment, or allowing others to videotape them dancing in a private setting (Comp. Ex. A);
- ShyDancer: Those amateurs submitting videos for inclusion on a disc of dance performances to be sold at retail locations;
- ShyDancer: Selection (by whom is unclear) of some of those videos for inclusion in a "half hour TV Show";
- Musicflow: Performances by musicians at "Musicflow" concerts;
- Musicflow: Videotaping of musical performances at those concerts;
- Musicflow: Inclusion of those taped music performances on a CD for sale at retail locations.

By contrast, the Marketing Plan does not discuss *any* of the hallmarks of the accused Shows:

- A "contest" element whereby contestants vie for a prize, such as a music recording contract, performance contract, or trophy;
- Audience participation elements, whereby television viewing audiences vote for their favorite performers;

- A panel of diverse industry professionals and media personalities acting as judges and commentators during the process;
- In the case of the "Musicflow" concept, a television component (the description appears limited to live concerts and CD sales, lacking a television component;
- An "audition" and "selection" component, where contestants audition for a spot on the program, and after a series of selections, compete against each other in a narrowed field.[3]

In short, the only similarity between the idea expressed in the Marketing Plan and the four Shows is amateur performance. And, as any karaoke singer or high school talent show producer knows, these ideas are neither unique nor protectable. As a result, even if the Plaintiff *could* show he has a valid copyright, and that Defendants had access to his work, he cannot show that the Shows are substantially similar to his work, therefore, his copyright claim must be dismissed.

### C. Plaintiff's Trade Secret and Lanham Act Claims Fail Because He Has Not Alleged the Existence of a Trade Secret or Trademark, Much Less Misappropriation or Infringement by Any Defendant

In Counts II and VI, Plaintiff attempts to state a claim for trade secret misappropriation. (Compl. ¶¶ 16, 21.) The Plaintiff repeatedly alleges that his Marketing Plan is a "trade secret," yet to be a trade secret under Missouri law the Plaintiff must have made some efforts, "reasonable under the circumstances," to maintain the secrecy of that information. Mo. Rev. Stat § 417.453(4). Plaintiff has not alleged that he used any efforts, much less reasonable efforts, to guard the secrecy of his Marketing Plan. In fact, it appears he sent it indiscriminately to anyone he knew, without regard for whether they were bound to guard it as confidential. (Compl. ¶ 10; Marketing Plan.)

The Plaintiff also fails to establish the remaining elements of a trade secret claim, namely, that his Marketing Plan derives some independent economic value by virtue of it allegedly not being generally known, and that the Defendants used or disclosed the Marketing Plan while knowing it was subject to some confidentiality obligation. Mo. Rev. Stat. §§

---

[3] For more details on the Shows visit www.fox.com, www.abc.go.com and nbc.com.

Case 6:10-cv-03200-RED   Document 18   Filed 06/29/10   Page 14 of 21

417.453(2), (4). The Plaintiff has simply failed to allege any facts that support a trade secret claim; in fact, his allegations admitting public distribution belie such a claim entirely.

The Plaintiff also vaguely alleges in Count VI that the Defendants have violated the "Lanham Act" (and his vague "failure to attribute" claim may be an attempt to allege "passing off" under the Lanham Act). Assuming the Plaintiff is referring to Lanham Act section 1125(a)[4], and his Lanham Act claim accuses Defendants of "passing off" the Shows as original material, such claim is preempted by the Copyright Act, because it involves only alleged copying of material (orf failure to attribute) covered by the Copyright Act. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Plaintiff alleges no facts indicating he is asserting trademark rights, false advertising or any other claim that could potentially implicate the Lanham Act. In any event, to bring any kind of Lanham Act claim, the Plaintiff would have to show a likelihood of consumer confusion. *Hartman*, 833 F.2d at 121. Given that the Plaintiff's concepts never made it to market, there is no consumer base that could be confused as to the source of the parties' respective creations. Therefore, any "Lanham Act" claim is not inapplicable to the facts but also preempted by the Copyright Act.

**D. Plaintiff's Tort Claims (Counts I, II, III, IV and VI) Fail Because Plaintiff Has Not Alleged Facts Establishing the Elements of Those Claims, and Many of Those Claims are Preempted by the Copyright Act**

To the extent the Plaintiff attempts to allege other claims, each must be dismissed, because either he has not alleged the elements necessary to state such claims, or those claims are preempted by the Copyright Act, or both. The Plaintiff uses words in the Complaint that indicate he is trying to make common law claims for fraud, conversion, failure to attribute, conspiracy, breach of fiduciary duty, "equal protection" and theft. All of these claims fail, as set forth below.

---

[4] The Complaint refers to Lanham Act "15 U.S.C. § 1126," which is inapplicable to any allegation in the Complaint, as that section relates to filing international trademark applications.

1.    Fraud.  The elements of a fraud claim under Missouri law are:  (1) a false, material representation; (2) the [defendant's] knowledge of its falsity or his ignorance of its truth; (3) the [defendant's] intent that it should be acted upon by the [plaintiff] in the manner reasonably contemplated; (4) the [plaintiff's] ignorance of the falsity of the statement; (5) the [plaintiff's] reliance on its truth, and the right to rely thereon; and (6) proximate injury. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1064 (8th Cir. 2005) (citing *Gast v. Ebert,* 739 S.W.2d 545, 547 (Mo. 1987) (en banc)).  The Plaintiff has not alleged even the barest facts necessary to establish that any of these elements are met, nor can he, since the Defendants had never heard of the Plaintiff prior to the time they were served with the Complaint, and thus could not have made any statements to him upon which he could have relied for anything.  Plaintiff fails to allege any statements, false or otherwise, made to him by any Defendant.  (*See* Compl.)  As such, Plaintiff fails to state any facts supporting a claim for fraud.

2.    Conversion.  To state a claim for conversion, the Plaintiff must show that: "(1) the plaintiff was the owner of the property or entitled to possession of the property, (2) the defendant took possession of the property with the intent to exercise some control over it, and (3) the defendant thereby deprived the plaintiff of the right to possession of the property."  *IOS Capital, LLC v. Allied Home Mortg. Capital Corp.*, 150 S.W.3d 148, 153 (Mo. App. 2004); *Muir v. Ruder*, 945 S.W.2d 33, 35 (Mo. App. 1997).  Even if the Plaintiff could establish that the Defendants deprived him of the use of property (which he cannot do, because the Shows bear no resemblance to his Marketing Plan), conversion claims based on copyrightable subject matter are preempted because the allegedly converted work constitutes subject matter protected by the Copyright Act, and the conversion claim involves only the same activity proscribed by the Copyright Act: copying a protected work.  17 U.S.C. § 301; *Coyne's & Co., Inc. v. Enesco, LLC,*

565 F. Supp. 2d 1027 (D. Minn. 2008). Therefore, the Plaintiff can state no claim for conversion.

3. <u>Failure to Attribute</u>. In Count II, Plaintiff appears to be trying to plead a claim for "failure to attribute." Neither the Copyright Act nor any state law provides a right to attribution, except in the case of established works of visual art. 17 U.S.C. § 106A. The Marketing Plan is clearly not a "work of visual art" (defined as a "painting, drawing, print or sculpture, existing in a single copy or a limited print run," 17 U.S.C. § 106A). Accordingly, even if the Defendants had used the Plaintiff's work (which they did not), they would have no obligation to attribute his "contribution." As such, Plaintiff has no viable cause of action for "failure to attribute."

4. <u>Conspiracy</u>. In Count III, Plaintiff generally accuses the Defendants of "conspiring" together. (Compl. ¶ 17.) However, to state any claim for civil conspiracy, the Plaintiff must first allege the elements of an underlying tort. "A civil conspiracy claim is not itself actionable in the absence of an underlying wrongful act or tort." *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 156 (Mo. App. 2005). Here, Plaintiff has failed to allege *any* underlying act or tort, as not one of his threadbare accusations amounts to a viable cause of action. Therefore, there can be no conspiracy claim as a matter of law.

5. <u>Equal Protection</u>. The Plaintiff appears to believe that the Defendants somehow deprived him of "equal protection" and "free exercise of rights." (Compl. Count IV.) Equal protection claims, however, may only be brought against governmental entities. *U.S. v. Morrison*, 120 S.Ct. 1740 (2000) ("[t]he Fourteenth Amendment, by its own terms, prohibits only state action"). No Defendant falls into that category; they are all private entities and individuals, not government actors, and Plaintiff has not, and cannot, allege otherwise. Accordingly, there is no "equal protection" claim that could be stated here.

6.     <u>Breach of Fiduciary Duty</u>.  To establish a fiduciary relationship under Missouri law, the Plaintiff must show: (1) the existence of a fiduciary relationship between the parties, (2) a breach of the fiduciary duty, (3) causation, and (4) harm. *Grewell v. State Farm Mut. Auto. Ins. Co.*, 162 S.W.3d 503, 508 (Mo. App. 2005). "A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 740-41 (Mo. App. 2002).  The Plaintiff makes no attempt to allege facts that would indicate any fiduciary relationship existed between himself and any Defendant, or even that any of the Defendants ever met him or made any statement that would indicate Plaintiff could place his trust in them.  Accordingly, any purported claim for breach of fiduciary duty must fail.

7.     <u>RICO</u>.  In Count V, Plaintiff vaguely alleges he is bringing a "RICO" claim.  To prevail on a RICO claim, Plaintiff must prove "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 406 (8th Cir. 1999) (citation omitted).  To establish a pattern, "at least two acts of racketeering activity" are required." *Id.*  A RICO claim can only be predicated on particular acts listed in 18 U.S.C. § 1961 (1).  Moreover, "the predicate acts must be related and must 'amount to or pose a threat of continued criminal activity.'" *Id.* (citation omitted).  Here, Plaintiff alleges violations of 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud) as the predicate acts for his RICO claim.  (Compl. ¶ 20.)  "When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Id.*  "Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves." *Id.* at 407.  "The court

must look to the underlying scheme to defraud." *Id.* In this case, the Plaintiff has woefully failed to allege anything that gives rise to a RICO claim. He has failed to allege *any* use of mail or wires by the Defendants, or *any* pattern of activity directed at the Plaintiff. The RICO claim, therefore, fails.

### E. Plaintiff Is Not Entitled To Recover Punitive Damages As a Matter of Law, and Plaintiff's Reference to Punitive Damages Must Be Stricken

Plaintiff seeks to recover $4.9 million in punitive damages from each Defendant. The Plaintiff's tort claims must be dismissed, and punitive damages are not recoverable in a copyright action. Therefore, to the extent Plaintiff is allowed to proceed with his copyright claims, the references to punitive damages must be stricken. Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to strike "immaterial" or "impertinent" matter from a pleading. F.R.C.P. 12(f). Although courts often hesitate to strike material from a pleading, "a motion to strike maybe used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479, n. 34 (C.D. Cal. 1996); *Spinks v. City of St. Louis Water Div.*, 176 F.R.D. 572 (E.D. Mo. 1997) (striking punitive damages claim as being unavailable as a matter of law).

The Copyright Act expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright. . . ." 17 U.S.C. § 301(a). Federal and state courts across the country repeatedly and unanimously hold that Section 301(a) bars recovery of punitive damages arising from copyright violations. *Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001); *Hays v. Sony Corp. of Am.,* 847 F.2d 412 (7th Cir. 1988); *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 251 (4th Cir. 1994); *Blair v. World Tropics Prods.*, 502 F. Supp. 2d 828, 838 (W.D. Ark. 2007). Accordingly, Plaintiff's request for punitive damages should be stricken under Rule 12(f).

## III.  **CONCLUSION**

The Plaintiff tries in vain to use as many legal buzzwords as possible to formulate a cause of action, yet his entire complaint boils down to one allegation -- that the Defendants "used" his work as the basis for the Shows.  Such an accusation falls squarely under the Copyright Act, and as discussed herein, the Copyright Act is simply not availing.  The Plaintiff failed to obtain the copyright registration necessary to bring a claim under the Copyright Act, and even if he had (or later does), he cannot allege either the access to or the similarity of the works necessary to state a copyright infringement claim.  The remaining "claims" are either preempted by the Copyright Act, clearly not applicable, or so vague as to be indecipherable.  Accordingly, the Plaintiff's Complaint should be dismissed, with prejudice.

SONNENSCHEIN NATH & ROSENTHAL LLP


__/s/_Andrea Kimball_____
Andrea M. Kimball            MO Bar # 61316
Rebecca S. Stroder           MO Bar # 51203
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
(816) 460-2400; (816) 531-7545 (fax)
akimball@sonnenschein.com
rstroder@sonnenschein.com

ATTORNEYS FOR DEFENDANTS SONY
MUSIC ENTERTAINMENT, SIMON FULLER,
SIMON COWELL, NIGEL LYTHGOE, 19
ENTERTAINMENT AND CKX, INC.

<u>Certificate of Service</u>

I hereby certify on this 29th day of June, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and I deposited a copy of the foregoing document with the United States Postal Service, first-class postage prepaid to:

Paul Thayil
2020 E. Kerr St., Apt. C-109
Springfield, MO  65803
Plaintiff

_____/s/ Rebecca Stroder_____
Attorneys for Defendants SONY Music
Entertainment, Simon Fuller, Simon Cowell, Nigel
Lythgoe, 19 Entertainment, and CKX, Inc.